OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY
v. JOHN N. RICKARDS.

FILED JANUARY 16, 1894.    No. 5187.

1. **Adverse Possession.** AN EASEMENT in real estate may be acquired by open, notorious, peaceable, uninterrupted, adverse possession for the statutory period of ten years.

2. ——. Where a party enters upon and occupies land under color of title, such possession is regarded as co-extensive with the entire tract described in the instrument under which such possession is claimed.

3. **Easements:** ADVERSE POSSESSION. Although color of title is not indispensable to adverse possession, yet where a railroad company enters upon and takes possesssion of the real estate of another for a right of way without color of title, such possession is limited to the land actually occupied; and in such case the corporation will acquire a right of way of the width, and no more, which it has so used and occupied for the full period of limitations.

4. **Eminent Domain:** PLEADING: DESCRIPTION.   In proceedings to condemn land of an individual for the use of a railroad, the petition must accurately describe the tract affected by the proceedings.   Where the petition describes the land by government subdivision, the description is insufficient to authorize the condemnation of real estate within the limits of an incorporated city, which real estate has been laid out and platted into lots and blocks.

ERROR from the district court of Gage county.   Tried below before APPELGET, J.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error.

*Rickards & Prout, contra.*

NORVAL, C. J.

This is an action of ejectment by John N. Rickards against the Omaha & Republican Valley Railway Company to recover possession of a portion of lot 103, in South Beatrice, an addition to the city of Beatrice. The petition is in the ordinary form. The defendant answered by a general denial, and also pleaded the statute of limitations of ten years. Plaintiff replied, denying each allegation of new matter contained in the answer. There was a trial to the court, without the intervention of a jury, which resulted in a finding and judgment for the defendant company that it has an easement in, and is entitled to the possession of, that part of said lot 103 embraced in the following description, to-wit: Commencing at the northeast corner of said lot 103, running thence south 27 feet; thence northwesterly to a point 56 feet west of the northeast corner of said lot; thence east 56 feet to the place of beginning. The court further found for the plaintiff for so much of said lot 103 as is described as follows: Beginning at a point 56 feet west of the northeast corner of said lot, running thence west 43 feet; thence southeasterly to a point in the south line of said lot, 37 feet west of the southeast corner of said lot; thence east 37 feet; thence north 17 feet; thence northeasterly to the point of beginning. The defendant prosecutes error, alleging that the finding in favor of the plaintiff is not sustained by sufficient evidence, and is contrary to law. The cause was tried upon the following agreed statement of facts:

"First—The property in controvery is situated within the limits of the east half northeast quarter of section 4, town 3, range 6 east of the sixth P. M.

"Second—The legal title to said tract, and the disposition thereof is shown, so far as the same appears thereon, by the abstract of the title thereto, hereto annexed, marked Exhibit 'A' and made a part hereof; other proceedings

and conveyances claimed to affect said property are as below stated.

"Third—The abstract annexed, and its memoranda of conveyances, and also the statements and memoranda of other proceedings below written, are to be taken with the same effect as though the original instruments and proceedings were themselves hereto annexed.

"Fourth—The track of the defendant and its road-bed in fact occupied, when constructed, and still occupies, the following described ground, viz.: Commencing at the northeast corner of lot No. 103 in South Beatrice, running thence south 27 feet; thence in a northeasterly direction to a point 56 feet west of the northeast corner of said lot; thence east 66 feet to the place of beginning.

"Fifth—The Omaha and Republican Valley Railroad Company was, about the month of September, 1879, a railroad corporation of this state, and at said time located its line of railroad over and across the east half northeast quarter section 4, town 3 north, range 6 east, and by its line across said land in fact intersected and crossed lots 104, 103, 102, 110, 111, 112, 113, 114, 99, 100, 101, in South Beatrice, as shown by the plat thereof, referred to in the abstract of title hereto annexed, marked Exhibit 'A.'

"Sixth—That the Omaha & Republican Valley Railroad Company finished and completed its line of railroad, as in this agreement mentioned, on or about January 1, 1880, and has from thence hitherto, it and its successors, maintained, occupied and operated the same on the line of its original location.

"Seventh—That about the month of September, 1879, the Omaha & Republican Valley Railroad Company commenced and instituted certain proceedings in the county court of Gage county, Nebraska, to obtain a right of way for its railroad, and for such purpose duly filed its petition in said court, and that said court duly appointed a commission for such purpose as provided by law; that on or

58

about November 13, 1879, proof of service of notice on the South Platte Land Company in said proceeding was filed in said court, a copy of which is hereto annexed, marked Exhibit ' B'; that afterwards on the 14th day of November, 1879, said commission filed in said proceedings a report of its doings in the premises, a copy of which is hereto annexed, marked Exhibit 'C'; that on November 18, 1879, the said Omaha & Republican Valley Railroad Company deposited in said county court the amount of money awarded by said commission in said proceeding as stated and awarded in and by said Exhibit 'C'; that afterwards, on December 29, 1879, there was filed in said county court, by said South Platte Land Company, a certain order for the payment of money, a copy of which, with its indorsements, is hereto annexed, marked Exhibit ' D,' and made a part hereof; that on January 9, 1880, the said county court paid out said money on said order and took a receipt therefor in writing, a copy of which is hereto annexed, marked Exhibit 'E,' and the same is made a part hereof. The said commissioners so appointed by said county court were, before the making of the said appraisement and report set forth in said Exhibit ' C,' qualified by taking the oath prescribed by law, a copy of which is hereto annexed, marked Exhibit 'C C,' and the same is made a part hereof. The said report and condemnation proceedings above referred to were all of them recorded in the office of the county clerk of Gage county, Nebraska, on the 7th day of January, 1880, at 2 o'clock P. M. of said day, and entered in the numerical index and recorded in book ' D ' of Miscellaneous Records, page 125, and following.

" Eighth—That on the 26th day of December, 1879, the said South Platte Land Company made, executed, and delivered to the said Omaha & Republican Valley Railroad Company its certain deed, a copy of which is hereto annexed, marked Exhibit ' F,' and the same is made a part hereof.

"Ninth—The map or plat hereto annexed, marked Exhibit 'G,' made a part hereof, shows the location of the east half northeast quarter and of South Beatrice as laid out thereon, and the line of the original location and construction of said railroad over and through the same, the track shown thereon crossing near the northeast corner of lot 103 being the line of original location.

"Tenth—The heavy white line on said map shows the line which defendant and its predecessor claims and has claimed as its exterior boundary lines under said condemnation proceedings and the said deed to the Omaha & Republican Valley Railroad Company, the particular premises within lot 103 so claimed by it being described as follows: Commencing at the northeast corner of lot 103, running thence west on north line of said lot 99 feet; thence southeasterly to a point in the south line of said lot, 37 feet west of the southeast corner thereof; thence east 37 feet; thence north 44 feet to the place of beginning.

"Eleventh—The Omaha & Republican Valley Railway Company is a railroad corporation of the state of Nebraska, and is the successor to the Omaha & Republican Valley Railroad Company, and as such successor is vested with all the property, rights, and franchises of the said Omaha & Republican Valley Railroad Company.

"Twelfth—The said Omaha & Republican Valley Railroad Company and its successor, this defendant, have been in the open, notorious, exclusive, and adverse actual possession of its said track and road-bed as a railroad, as constructed on its said line of original location, for more than ten years before the commencement of this suit.

"Thirteenth—The premises in the vicinity of the said railroad in the years 1879 and 1880, when said railroad was built over and across the said east half northeast quarter, were vacant and uninclosed lands or lots. The plat of South Beatrice had before that time been made and recorded, but the ground was vacant, uninclosed, and unoccupied.

"Fourteenth—It is agreed that on August 24, 1877, the following streets and parts of streets, as shown on Exhibit 'G,' were duly vacated, to-wit: Fifth, Sixth, Seventh, and Eighth, from the south line of South Beatrice to the south line of Perkins street, Ames street west of the center of Fourth street, also Fourth street, all except the east half of said street, lying north of the south line of Perkins street; and afterwards, on April 26, 1879, a strip extending from the south line of Perkins street southwards was dedicated to the public, which strip was located on what was once the east half of Fifth street, before its vacation."

The abstract of title, which is attached to the foregoing stipulation as an exhibit, shows a complete and perfect chain of title to the entire premises in controversy, by patent from the United States government to one John L. Carson, and from Carson, through other parties, to plaintiff. The railroad company claims title to the real estate mentioned in the petition by reason of adverse possession. The portion of said lot 103 described in the fourth paragraph of the stipulation is occupied by the road-bed and track of plaintiff in error, and it having been in the open, notorious, exclusive, adverse, actual possession thereof for more than ten years prior to the bringing of this suit, the corporation thereby acquired an easement therein, and was entitled to said strip of ground. The trial court having given the defendant below judgment for that portion of the lot, it is no longer involved in the case.

The controlling, and we may say the only, question presented for our consideration and decision is this: Did the railroad company acquire title to any portion of said lot which the trial court found belonged to Rickards, and which adjoins on the south the strip actually used and occupied by the road-bed and track of the corporation? As we have said, plaintiff in error claims the land in dispute by adverse possession. While the railroad company has been in the exclusive occupancy, for the statutory period, of the

strip used for the road-bed and track, there is nothing in
the agreed statement of facts to show that it has been in
possession of, or exercised any acts of ownership over, any
other portion of said lot 103. The premises, when the
road was constructed, were vacant, uninclosed, and unoccu-
pied. There is no claim that the Omaha & Republican
Valley Railroad Company, or its successor, plaintiff in
error, has ever inclosed the land in dispute with a fence,
or that when the road was located, or at any other time,
it staked out the width of its right of way across lot 103.
So far as this record discloses, the company has never used
any portion of the lot for its right of way, except the strip
which was awarded it by the district court. The presump-
tion of law is always in favor of the owner of the record
title, and the burden of proving adverse possession rests
upon the party relying thereon. It did not devolve upon
plaintiff below to establish that he and his grantors have
been in the actual occupancy of the premises during the
statutory period.

Counsel for the railroad company call attention to the
tenth paragraph of the stipulation of the parties above
mentioned, which reads: "The heavy white line on said map
shows the line which defendant and its predecessor claims
and has claimed as its exterior boundary lines," etc. There
can be no doubt that it is established that the company has
ever claimed its right of way, where the road crosses lot
103, consisted of a strip of land 100 feet in width, being
50 feet on each side of the center line of its road-bed, and
the land here demanded is within such limits; but it does
not necessarily follow that the plaintiff in error, or its pre-
decessor, has held adverse possession of the ground next
south of the twenty-seven feet which has been occupied by
its track and road-bed. Whether the adverse possession
of the twenty-seven feet constituted a similar possession of
the whole fifty feet south of the center of its track depends
upon whether its occupancy has been under color of title.

There is a marked distinction between a possession acquired under a claim of right or color of title, and where possession of land is taken and held by a mere usurper or intruder. Where a party's occupancy is under a color of title, his possession is regarded as being co-extensive with the entire tract described in the instrument under which possession is claimed. On the other hand, where one enters without color of title, his possession is confined to the land actually occupied. It is firmly settled in this state that while color of title is not indispensable to adverse possession, yet, when the occupancy is without color of title, possession is limited to the land actually occupied. (*Gatling v. Lane,* 17 Neb., 80; *Haywood v. Thomas,* 17 Neb., 237.) The rule stated applies to corporations and individuals alike.

Did the railroad company take possession of any part of lot 103, and hold and occupy the same under and by virtue of a color of title? Neither the condemnation proceedings mentioned in the seventh paragraph of the stipulation, nor the deed referred to in the eighth paragraph, conferred any authority upon the company to take possession of, and construct its road over, lot 103, as we shall proceed to show. In the condemnation proceedings, no reference is made to lot 103, in South Beatrice, or any other lot. The real estate in the notice of condemnation of right of way, and in the report of the commissioners appointed by the county judge of Gage county to appraise and assess the damages caused by the location of the railroad, is described as the east half of the northeast quarter of section 4, township 3 north, range 6 east. It appears from the abstract of title that the northeast quarter of the northeast quarter of said section 4, in June, 1872, was platted by the owner thereof as South Beatrice, which plat was duly recorded on the 12th day of the same month. The condemnation proceedings were not commenced until more than seven years thereafter, and, at the time they were instituted and the railroad was located and constructed, the real estate in controversy

was within the limits of an addition to the city of Beatrice. The description of the property in the condemnation papers was insufficient to include lands which had theretofore been laid out and platted into lots and streets; therefore, by the proceedings to condemn, the railroad company acquired no right of way over lots in South Beatrice. And this is the construction placed upon the condemnation proceedings by the railroad company, for on the 26th day of December, 1879, in consideration of $750, it procured a deed from the South Platte Land Company, the owner of the lots in South Beatrice, for right of way, a strip fifty feet wide on each side of the center of its railroad track as then located through lots 99, 100, 101, 102, 110, 111, 112, 113, and 114, in South Beatrice. If the railroad company acquired a right to pass over the foregoing mentioned lots under the law of eminent domain, there was no necessity of its afterwards obtaining the deed alluded to. This deed was insufficient to create a color of title to the premises in litigation, for the obvious reason that lot 103, of which they form a part, is not mentioned in the conveyance. For some cause or other, not disclosed by the record, this lot was not included in the description therein. From the fact that in the notice of condemnation, as well as in the report of the commissioners appointed to assess the damages, the land sought to be acquired for right of way is described as being "a strip of ground 100 feet in width upon the line as located," it cannot be inferred that the railroad company claimed or occupied a strip that wide where its track passes over lot 103. A right of way of a railroad is generally 100 feet wide, and probably, where real estate is sought to be appropriated for that purpose by the power of eminent domain, and the width required for right of way is not specified in the proceedings, or where a deed conveys to a railroad company a right of way over a particular tract of land, and no mention is made in the conveyance of the width of the land conveyed, it might be held that the customary or

usual right of way was acquired. Some of the authorities cited by plaintiff in error go to that extent; but it requires no argument to show that such decisions have no application here, since the railroad company entered upon and constructed its road across the lot in question without authority so to do from the owner, and without complying with the statute which confers upon a railroad company the power to appropriate lands for right of way against the consent of the owner. Where a railroad company enters upon land without any pretense of title, in the absence of a designation of boundaries, there is no presumption that the corporation has appropriated for its right of way a strip of the usual width, or all that the statute allows it to take for that purpose.

Attention has been called to the statute of this state relating to eminent domain. We cannot conceive that it has any bearing upon the subject under discussion. As we have already shown, the railroad company acquired no right to cross lot 103 by the condemnation proceedings. Again, the statute does not fix the exact width of a railroad right of way, but, on the other hand, it expressly provides that "the lands held, taken, and appropriated, otherwise than by the consent of the owner, shall not exceed 200 feet in width, except for wood and water stations and depot grounds, unless where greater width is necessary for excavations, embankments, or depositing waste earth." The legislature has specified the maximum width, merely, where land is appropriated for a right of way against the consent of the owner, and this court has held that the right is restricted to so much real estate as is essential for the location, construction, and convenient use of the road. (*Forney v. Fremont, E. & M. V. R. Co.*, 23 Neb., 465.) It must be presumed, in the absence of a showing to the contrary, that the portion of lot 103, which has been actually used and occupied by the railroad company for the past ten years, was all that was reasonably necessary to the convenient and proper use and maintenance of the railway.

The principal authority on which counsel for plaintiff in error rely is *Hargis v. Kansas City, C. & S. R. Co.*, 100 Mo., 210.   That was a case where a land owner verbally agreed to donate and convey to the railroad company the usual right of way across his land, and in pursuance thereof the company entered upon the land and staked off a right of way of the customary width of 100 feet, and constructed its road thereon, but exercised actual and exclusive possession of only 25 feet along the center of the strip, under a claim and color of title to the whole 100 feet.   It was held that such possession for the necessary length of time gave the company a title, under the statute of limitations, for the strip of 100 feet in width.   We find no fault with that decision, but it is clearly inapplicable to the facts of the case at bar.   There the corporation entered upon and occupied the land under a license given by the owner, and the boundary of the right of way was marked by stakes.   The parol agreement to convey was sufficient to constitute a good color of title (*Niles v. Davis*, 60 Miss., 750; *McClellan v. Kellogg*, 17 Ill., 498; *Teabout v. Daniels*, 38 Ia., 158; *Rannels v. Rannels*, 52 Mo., 108); and the actual possession of a portion of the strip under a claim and color of title to the whole was constructive possession of the entire 100 feet.   In the case we are considering, there was no designation of the boundaries of the 100 feet now claimed as a right of way, nor did the railroad company enter under a license, parol or otherwise, from the owner of the lot.   It took possession without a shadow or claim of right, therefore such possession is limited to that portion of the lot actually occupied by the company.   It is not deemed necessary to refer to the other cases cited in the brief of counsel for plaintiff in error.   We are of the opinion that, for the reasons already stated, the judgment of the district court is right, and it is

AFFIRMED.