PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT, V. EUGENE FELTZ, APPELLEE.
271 N. W. 787
FILED FEBRUARY 19, 1937. No. 29806.

*E. H. Evans* and *Beeler, Crosby & Baskins,* for appellant.

*Halligan, Beatty, Halligan & Maupin* and *G. J. McGinley, contra.*

Heard before ROSE, GOOD, EBERLY and CARTER, JJ., and RYAN and KROGER, District Judges.

RYAN, District Judge.

The plaintiff commenced this action in the district court for Keith county, Nebraska, to enjoin the defendant from disturbing or interfering with plaintiff's possession of a strip of land containing 7.76 acres, more or less, which the plaintiff claims to have acquired from the defendant through condemnation proceedings. A temporary injunction was granted on the filing of the petition. The defendant answered and filed a cross-petition asking to have the plaintiff enjoined from trespassing upon the real estate involved, and to have his title quieted against any claims of the plaintiff by reason of the attempted condemnation proceedings.

Upon the trial of the case on its merits, the district court dismissed the plaintiff's petition, dissolved the temporary injunction theretofore granted, and granted the defendant a permanent injunction against the plaintiff until such time as plaintiff should acquire title or right of possession to the real estate involved, by a proper and legal condemnation proceeding, and provided in the decree that the injunction should not become operative or effective until 60 days thereafter, so that plaintiff might have the opportunity to reinstate condemnation proceedings to the real estate involved, and secure title thereto. The plaintiff has appealed from that decree.

The plaintiff is a corporation organized under and by virtue of the provisions of chapter 86, Laws 1933, and there is no question raised as to its right to exercise the power of eminent domain. On January 24, 1935, the plaintiff instituted a condemnation proceeding in the county court of Keith county, Nebraska, for the purpose of acquiring a right of way across the lands of the defendant and others, for the construction of a supply canal. The petition of the plaintiff described the lands of the defendant, sought to be condemned, by metes and bounds, and stated that the acreage was 7.76 acres, more or less. The only reference to the canal proposed to be constructed across

said land found in the petition is the designation of it in paragraph 1 as a "supply canal."

The defendant, by proper objections filed in the county court, challenged the sufficiency of the plaintiff's petition, principally on the ground that it failed to state the size of the ditch or canal to be constructed. These objections were overruled, the appraisal was made, damages assessed, and both the plaintiff and defendant appealed to the district court from the award of the appraisers. The defendant also prosecuted error proceedings to the district court, preserving his objections to the appointment of the appraisers. The canal was constructed by the plaintiff while the temporary injunction was in force. The defendant also challenged the sufficiency of the plaintiff's petition in the condemnation proceedings in his answer and cross-petition filed in this action. This pleading is of considerable length, but the principal objection urged is that the petition of the plaintiff in the condemnation proceedings was fatally defective and wholly insufficient to vest the county court of Keith county, Nebraska, with jurisdiction to proceed with or conduct the eminent domain proceedings against the lands of the defendant. The principal objection urged was that said petition did not set forth in any manner whatsoever the size and description of the supply canal intended to be constructed across the lands of the defendant.

This appeal presents two questions of law for decision: (1) The matter of the sufficiency of the plaintiff's petition in the condemnation proceeding. (2) Did the appeal taken by the defendant from the award of the appraisers waive such defects, if any, as might be found in said petition?

Section 46-603, Comp. St. 1929, prescribes the procedure which the plaintiff was required to follow. It provides as follows: "In case of the refusal of the owner or claimant of any lands through which such ditch, canal or other works are proposed to be made or constructed, to allow the passage thereof, the person, desiring the right of way, may present to the judge of the county in which such lands are situated, a petition describing the lands to be crossed,

the size of the ditch, canal or works, the quantity of land which is required to be taken, and setting forth the names of the parties interested in the lands to be crossed, and praying for the appointment of five appraisers, disinterested freeholders of said county, to ascertain the compensation to be made to such owners or parties interested. Upon the filing of said petition, the same proceedings for condemnation of such right of way shall be had as is provided by law for the condemnation of rights of way for railroad corporations; and the same provisions of law providing for the condemnation of rights of way for railroad corporations, the payment of damages and the rights of appeal shall be applicable to irrigation ditches, canals and other works provided for in this article."

It appears from this section of the statute that the essential allegations of a petition seeking to enforce the right of eminent domain are: (1) A description of the lands to be crossed; (2) the size of the ditch, canal or works proposed to be constructed; (3) the quantity of land which is required to be taken; (4) the names of the parties interested in the land to be crossed.

In the early case of *Omaha & R. V. R. Co. v. Rickards*, 38 Neb. 847, 57 N. W. 739, this court held with reference to the description of the lands to be taken: "In proceedings to condemn land of an individual for the use of a railroad, the petition must accurately describe the tract affected by the proceedings. Where the petition describes the land by government subdivision, the description is insufficient to authorize the condemnation of real estate within the limits of an incorporated city, which real estate has been laid out and platted into lots and blocks."

This decision was cited with approval in the case of *Dailey v. Missouri P. R. Co.*, 103 Neb. 219, 170 N. W. 888, wherein it was held: "A petition to condemn the land of another for the use of a railroad is the basis of the proceeding, and before an owner over his protest can be compelled under the sovereign power of eminent domain to part with the title to his land, it is essential to the validity of the pro-

ceedings that the petition filed with the county judge under section 5946, Rev. St. 1913, accurately describe the tract sought to be condemned." In that case the petition described the property of Mrs. Dailey as: "Lot 11, block 6, Paddock's Place, * * * is of uneven dimensions, but is approximately 115 feet deep by 66 feet wide." On the trial of the case it was stipulated that lot No. 11 was 66 feet wide from the north to the south line; and from east to west, at the north line, it was 139.5 feet deep, and at the south line, from east to west, it was 140 feet deep. The variance between the actual size of the lot and that set forth in the petition was held to render the condemnation proceedings null and void.

In the case of *Blue River Power Co. v. Hronik,* 112 Neb. 500, 199 N. W. 788, the question of the description of the lands to be crossed as well as the size of the works to be constructed were both involved. That was a proceeding under the law of eminent domain seeking the condemnation of rights for the overflow of lands caused by the erection and maintenance of a dam across the Blue river, which was being constructed for water-power purposes. The allegation contained in the petition with reference to the size of the works to be constructed was as follows: "That the Blue river runs through and across the above described tract of land; that your petitioner has been duly authorized to construct a dam across the Blue river upon said real estate to the height of sixteen (16) feet for water-power purposes; that your petitioner duly submitted a plan of its proposed dam to the state board of irrigation, highways and drainage of the state of Nebraska, for examination and approval, and that said state board duly approved the same March 2, 1918, and authorized its construction to a height of sixteen (16) feet." In that case the court held: "In order to confer jurisdiction, the petition by which such proceedings are instituted must with substantial accuracy describe the lands to be crossed, the size of the works to be constructed, and the quantity of land required to be taken." In discussing the description of the dam, the court said:

"There is to be a dam to the height of 16 feet across the Blue river somewhere upon the 20-acre tract of land owned by the petitioner. A great deal may, and doubtless does, depend upon the particular location of the dam and of each end thereof and its direction and length as to the overflow that will be produced thereby. The petition shows that certain lands for the distance of more than four miles upstream are to be overflowed and affected by this dam. It follows that very little difference in the height and location of the dam will make a large difference in the land to be overflowed. The skilled person who would determine the exact location of these lines must have a starting point, and we fail to discover one in the petition. The dam is said to be 16 feet high. From what point does the measurement proceed? Is it from the low water mark or the bed of the stream? And, if the bed of the stream, is it the lowest part thereof or is it what is sometimes called the flow line, and how determined and how may it now be found? * * * The petition gives no information which the statute requires as to the size or location of the works, which in this instance is the dam, and the body of water which will be impounded thereby. * * * Now, if a condemnation proceeding fully completed, because it describes vacant, unoccupied land by governmental subdivisions, when it has been laid out in lots and blocks, or because it made a variance of a little less than 20 per cent. in the depth of certain property, is so fatally defective that no rights were acquired thereby, it must necessarily follow that, when objection is made in the inception of a proceeding that the description is so indefinite as that contained in the petition here, and as incapable of being made definite by anything therein stated, it is likewise fatally defective and insufficient to confer jurisdiction."

The appellant, however, contends that a duplicate of exhibit 2, found on page 205 of the bill of exceptions, was on file in the office of the county judge, and was furnished by him to the appraisers at the time the award was made. The facts with reference to that matter are not clear from

the record, except that it does appear that the appraisers had a copy of the plat at the time of the appraisement. It is not claimed, however, that a copy of exhibit 2 was attached to the petition filed in the county court. A careful examination of exhibit 2 shows that it consists of the metes and bounds description of the lands of the appellee sought to be condemned, and the plat thereof with the engineer's legend. It does not, however, set forth the size of the canal to be constructed, though it does show the general course of the same. There is no cross-section of the canal showing the width or the depth, and we must conclude, therefore, that even had a copy of exhibit 2 been attached to and made a part of appellant's petition, it would still be insufficient to meet the statutory requirements and to vest the county court with jurisdiction to appoint appraisers in condemnation.

The contention of the appellant that the appeal to the district court by the appellee from the award of the appraisers waived any technical defects in the petition is without merit, since the petition was insufficient to vest that court with jurisdiction. The rule is well stated in *Toledo, A. A. & N. M. R. Co. v. Munson*, 57 Mich. 42, 23 N. W. 455: "And while under the present statute the notice of appeal must point out the errors and objections to the proceedings had in the premises, all others being deemed to have been waived, and while the statute required the supreme court to pass upon those only, yet jurisdictional defects may be noticed at any stage of the proceedings, for the reason that if the court proceeds without jurisdiction, the whole proceedings are null and void."

It follows from these considerations that the judgment of the district court was correct and it is affirmed.

The finding of the trial court that the rights of the defendant had not been prejudiced is also affirmed, and the plaintiff is allowed 60 days from the issuance of the mandate herein in which to institute proper condemnation proceedings and acquire title to the right of way of said supply canal.

AFFIRMED.