CONSUMERS PUBLIC POWER DISTRICT, APPELLANT, V. CHARLES E. ELDRED ET AL., APPELLEES.

22 N. W. 2d 188

FILED MARCH 15, 1946.   No. 32025.

*Davis, Stubbs & Healy,* for appellant.

*Bern R. Coulter* and *Neighbors & Danielson,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an action by petition for injunction instituted by plaintiff in the district court for Morrill County, Nebraska, against the three members of a court of condemnation appointed to appraise properties of the plaintiff in and in the vicinity of Bridgeport, Nebraska, and the mayor, the mem-

bers of the city council, the city clerk, the city treasurer, the city attorney, and the special attorney of the said city of Bridgeport for the purpose of enjoining further proceedings in condemnation of the properties of the plaintiff.

To the petition the members of the court of condemnation filed a joint demurrer. All other defendants joined in a demurrer. The two demurrers were identical. The grounds of demurrer were (1) that the court was without jurisdiction over the persons or the subject matter, (2) that the plaintiff had no legal capacity to sue, (3) that there was a defect of parties defendant, (4) that several causes of action were improperly joined, and (5) that the petition failed to state sufficient facts to constitute a cause of action.

The demurrers were sustained and a judgment of dismissal of the action was rendered. From the order sustaining the demurrers and the judgment of dismissal the plaintiff has appealed.

The assigned grounds for reversal are that the court erred in sustaining the demurrers and that it erred in dismissing the action.

Because of its length we consider it inadvisable to quote herein the petition which is attacked by the demurrer, hence reference herein shall be to its substance. Prior to January 2, 1942, the Western Public Service Company, a corporation, chartered under the laws of Maryland, was the owner and operator of an electric producing and generating system with distribution lines and equipment in and extending outside the city of Bridgeport, Nebraska, certain real estate and leases on real estate used in its business, and an ice plant. All of these holdings were on January 2, 1942, conveyed and transferred to the plaintiff.

On December 22, 1941, the city council of the city of Bridgeport enacted an ordinance whereby February 17, 1942, was fixed as a date whereupon the voters of the city would be called upon to vote on the question of whether or not the city would take by condemnation certain of the property and rights of the Western Public Service Company. The ordinance contained a description of the prop-

erty it was proposed should be taken in case of a favorable vote on the proposition. Pursuant to the ordinance the proposition to be voted on was promulgated and as promulgated duly published. The election was held on the date fixed by the ordinance and notice of election. The proposal to condemn was approved by a sufficient vote of the people.

The city of Bridgeport had actual notice at the time of the sale and transfer from the Western Public Service Company to the plaintiff herein and the plaintiff herein had notice of the ordinance submitting the condemnation proposal to the vote of the people.

The result of the election was duly certified to the Supreme Court and pursuant to statute Charles E. Eldred, Earl L. Meyer, and William F. Spikes, all judges of the district court, were appointed as members of a court of condemnation. This court of condemnation was ordered to proceed to Morrill County, Nebraska, to organize and to proceed to appraise the value, for condemnation purposes, of the property condemned or sought to be condemned.

The condemnation court entered upon the performance of its function and this action was brought to enjoin them from proceeding with that performance and to enjoin the officials and representatives of the city of Bridgeport from proceeding further in the condemnation of the property and rights of the plaintiff.

Plaintiff alleged grounds for injunction and the questions presented by this appeal are the same. They are in substance that the proceedings are illegal, irregular, and void for the following reasons:

That the proceeding as instituted is against and in the name of a corporation having no interest in the property.

That the statements of fact contained in the proposal to the voters and in the ballot were untrue and misleading.

That the city is estopped to proceed further in the proceeding on account of the misleading information given to the voters.

That the description of the property to be condemned is ambiguous and fails to conform to the exactitude required in condemnation proceedings.

That if the proceeding be construed as having been instituted against a private corporation it is defective for failure to follow statutory requirements as to the amount of property to be taken.

That there is no statutory authority for condemnation of the property of one public agency by another where the property sought to be condemned is already dedicated to a public use.

That the power of the city to condemn property of the plaintiff does not extend beyond the electric distribution system within the city.

That the power of the city to acquire property by condemnation was nonexistent until after a favorable vote of the people, therefore the condemnation in question here, namely against the Western Public Service Company, may not be pursued against the property of the plaintiff.

The first question presented by the briefs is the propriety of an action in injunction to reach the matters contended for by plaintiff. As to this there can hardly be any question. This court as well as the courts of other jurisdictions is committed to the rule that injunction is a proper action in which to present the question of unlawful or improper exercise of the power of eminent domain. Drummond v. City of Columbus, 136 Neb. 87, 285 N. W. 109; May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

The general rule is not questioned by the appellees. In this connection they contend however that appellant is prevented from raising by injunction any question as to the correctness or sufficiency of the description contained in the proposal submitted to the electorate. On authority of May v. City of Kearney, *supra*, they insist that this question may be raised only by a citizen and taxpayer.

That case cannot be considered as authority for this contention. The phase of that case upon which appellees rely went only to the point of saying that a citizen and taxpayer, and not the Consumers Public Power District, could question the legality of an election held for the purpose of issuing bonds the proceeds of which were to be used in payment

of costs of property acquired by eminent domain. The holding was in nowise connected with proceedings leading up to and in condemnation.

Strange indeed would be a rule the effect of which was to say that the owner of property sought to be taken by eminent domain is barred from challenging the legality or regularity of the taking.

There can be no question that the appellant has available to it the right to question the legality and regularity of the proceedings and doings of the appellees in all respects as they are set forth in the petition.

A determination of the questions presented by the petition herein and the demurrers thereto depends in the main upon the interpretation and application of Nebraska statutes and their coordination with certain fundamental and well-established legal principles and procedures in and for the taking of property under the sovereign power of eminent domain.

It may be well to repeat here that the power of eminent domain is an inherent attribute of sovereignty and it exists independently of Constitution. Constitutional provisions relating thereto are in no sense a grant but are a limitation upon the power. The power is exercisable through the Legislature or through some department or agency by authority of the Legislature. The power may be exercised at will except to the extent and degree that it is constitutionally restricted. May v. City of Kearney, *supra.*

Generally the necessity or expediency of appropriating particular property for public use is not a matter for judicial cognizance, but is for determination by the legislative branch of government. The state possesses the power as a sovereign, and as such exerts it. May v. City of Kearney, *supra;* Adirondack Ry. Co. v. New York State, 176 U. S. 335, 20 S. Ct. 460, 44 L. Ed. 492.

In pursuance of its authority and prerogative the Legislature in 1919 empowered cities of the first and second class, if certain procedures were followed and a favorable vote of the electors was had on the proposition, to acquire by em-

inent domain "any water works, water works system, gas plant, electric light plant, or electric light and power plant, or heating plant, or street railway, or street railway system, located or operating within or partly within and partly without such city if the main part of such works, plant or system be within any such city * * * ." Sec. 19-701, Comp. St. 1929. In 1941, the Legislature repealed the section of the statutes containing this power but reenacted it with but one substantial change. The change extended the powers enumerated to villages as well as to cities of the first and second class. Sec. 19-708, C. S. Supp. 1941; sec. 19-701, R. S. 1943.

It will be noted that the section of the statute during the time involved in these proceedings contained the following provision: "Provided, that where any public utility properties supplying different kinds of service are operated as one unit and under one management the right to acquire and appropriate as herein provided shall cover and extend to the entire property and not to any divided or segregated part thereof, * * * ." Sec. 19-708, C. S. Supp. 1941.

As is clearly indicated by an examination of the provisions of this section of the statute municipalities of the classes named were empowered by the Legislature to take by eminent domain the kind and character of property therein named and described. It will also be noted that coupled with the power, if exercised, was a requirement that all such property and not segregated portions must be taken.

It is likewise clear from the presentation here that it was the power thus granted by the Legislature that the appellees were seeking to exercise. It is also clear that they were seeking to exercise it against the Western Public Service Company, a public service company, and not against the Consumers Public Power District.

As we understand the allegations of the petition herein it is not the contention of appellant that authority to exercise the powers granted by these provisions is nonexistent, but that such power does not exist against appellant and its

properties. Further it does not contend that statutory power to take by eminent domain of its properties in Bridgeport, Nebraska, does not exist, but on the contrary that it does exist within certain limits under other and different statutory provisions. It contends that the provisions of the chapter of which section 19-701, R. S. 1943, is a part has no application to taking property from it under the power of eminent domain except as to procedures in taking. It does contend however that even if the provisions of section 19-701, R. S. 1943, are applicable to it the proposal submitted to the electors is fatally defective.

Appellant contends that the proposal is in two respects defective, namely, that the property to be taken is insufficiently described, and that the property to be taken is limited to less than all in contravention of statutory mandate.

It contends that it is a public corporation and political subdivision within the meaning of Senate File 310 as amended and that the power to take property from it by eminent domain is found in and controlled by the provisions of section 70-650, R. S. 1943, the source of which was an amendment in 1939 to section 70-712, C. S. Supp. 1937, which section was section 12, chapter 86, Laws of 1933, as amended by section 7, chapter 152, Laws of 1937. Chapter 86 of the Laws of 1933 is what is popularly known as Senate File 310 or the Public Power and Irrigation Districts Act. The section as amended and revised, the amendment and revision being of no importance here, and as it existed prior to the amendment of 1945 thereto, is the following:

"Whenever any public power district or public power and irrigation district shall, as herein provided, acquire by purchase, lease, or otherwise, any electric distribution system, or any part or parts thereof, situated within or partly within any city or village, if any part of such system be within such city or village, such acquisition shall be upon the condition that such city or village may purchase, and such district shall be required to sell to such city or village, such electric distribution system, situated within or partly within such city or village, but not within the corporate

limits of any other city or village, by paying to such public power district or public power and irrigation district, such sum as is fair and reasonable, including reasonable severance damages. If any city or village and such district shall fail to agree upon a price and terms for the sale of such property to such city or village, the procedure for determining such price and terms of sale, and for compelling such sale shall be the same as is provided by sections 19-701 to 19-706, inclusive. In determining the amount of such severance damages, the court shall take into account, together with other relevant factors, the economic effect, if any, upon the system as a going concern as it remains after the severance, caused by severance therefrom of the part taken. In entering its award the court shall show how much of the total thereof was allowed for the physical property taken, and how much was allowed for other values and damages, if any."

By its pleading appellant has brought itself within the provisions and definitions of the act as a public corporation and a political subdivision. Sec. 70-602 et seq., R. S. 1943.

Specifically appellant contends that the city, since plaintiff is a public corporation and political subdivision within the meaning of Senate File 310 as amended, is limited by section 70-650, R. S. 1943, to the taking of its electric distribution system, whereas the proposal which was submitted to the electors was not so limited, and that therefore all proceedings had pertaining thereto were misleading, illegal, and void, also that the property sought to be taken was insufficiently described.

Appellees insist on the other hand that though appellant was the owner of the properties at the time of the submission of the proposition to the electors, since the Western Public Service Company was the owner at the time of the enactment of the ordinance of the city for submission, the proceedings were controlled by section 19-701 et seq., R. S. 1943. They further insist that the property was sufficiently described to permit the city to take by eminent domain. They contend that section 70-650, R. S. 1943, is cumulative

of section 19-701, R. S. 1943, and not a limitation and restriction thereon.

In support of their contention on cumulation they cite and quote from State ex rel. Consumers Public Power District v. Boettcher, 138 Neb. 22, 291 N. W. 709. In that case, referring to procedure in taking, it was said that there was no conflict between the two acts and that the later was cumulative of the former. The statement however had no reference to matters of substance wherein by the earlier act the city was required to take all the property of a public utility organization whereas by the later it was restricted and limited in its taking to the distribution system.

As to this matter of substance where there is real and substantial conflict the expression in the opinion in State ex rel. Consumers Public Power District v. Boettcher, *supra*, can have no application. The applicable rule in these circumstances is the well-established one that where a legislative act is complete in itself but is repugnant to, or in conflict with, a prior law, which is not referred to nor in express terms repealed by the later act, the earlier statute is repealed by implication. State v. Hevelone, 92 Neb. 748, 139 N. W. 636; State ex rel. Thayer v. School District, 99 Neb. 338, 156 N. W. 641. Of course the repeal is only effective to the extent of the repugnancy or the conflict.

The implied repeal in this instance would effect the removal of public corporations and political subdivisions of the state from the operation of section 19-701, R. S. 1943, and leave applicable section 70-650, R. S. 1943.

The contention of appellees in this respect cannot be sustained. We are required to hold that in a taking by a city from a public corporation and political subdivision organized under Senate File 310 the city is limited in its taking to the electric distribution system.

In support of their contention that proceedings are available under section 19-701, R. S. 1943, since the Western Public Service Company was owner at the time of the enactment of the ordinance, appellees rely on the doctrine of "relation" or "relation back." The doctrine has been de-

fined as follows: "That principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. * * * It is a fiction of law adopted by courts solely for the purposes of justice; a legal fiction invented to promote the ends of justice, or to prevent injustice and the occurrence of injuries where otherwise there would be no remedy." 53 C. J., Relation, s. 3, p. 1185.

The doctrine can have no application here since a necessary element and condition precedent to its application is absent. In order that it shall apply privity must exist. In Gibson v. Chouteau, 13 Wall. (U. S.) 92, it was said: "The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title."

Privity has been defined in Black's Law Dictionary, (3d ed.) p. 1423, as follows:

"Mutual or successive relationship to the same rights of property."

"Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest."

"In a general, nontechnical sense, private knowledge; joint knowledge with another of a private concern, which is often supposed to imply consent or concurrence; cognizance implying consent or concurrence."

There is nothing in the facts in this case as alleged in the petition from which it may be said that privity existed between the city of Bridgeport and the Western Public Service Company on account of the proposal of the ordinance to take the property of the Western Public Service Company.

Whether or not there was privity between the Western Public Service Company and the Consumers Public Power District is not a matter of concern here. If there was no benefit flowed from it to the city. A party to claim the benefit of the doctrine of relation must be a privy.

Assuming that the city of Bridgeport was empowered to take the properties as if they were the properties of the Western Public Service Company and under the terms and provisions of section 19-701, R. S. 1943, was the description sufficient for that purpose?

The proposal containing the description of properties to be taken and those not to be taken is the following:

" 'Shall the City of Bridgeport, Nebraska, by the exercise of the power eminent domain acquire and appropriate for public use all of the public utility property of the Western Public Service Company, a corporation, located and and (sic) operated partly within and partly without the City of Bridgeport, Nebraska, consisting of the ice plant, street lighting system, electric light and power plant, transformers, substation and the entire distributing system of the Western Public Service Company supplied with electricity from such electric light and power plant, transformers and substation and which is located partly within and partly without the corporate limits of the said City, and including the following described real estate and other property:

(a) Lot One (1), Block Five (5), Original Town of Bridgeport, Morrill County, Nebraska, together with the power plant, transformer and substation improvements located thereon,

(b) A certain lease made by the Chicago, Burlington & Quincy Railroad to the Western Public Service Company, dated the 1st day of February, 1930, and covering the following described property situated in the City of Bridgeport, Morrill County, Nebraska, to-wit: Beginning at a point eighty and nin-tenths (80.9) feet northeasterly from and at right angles to the center line of the main railroad track as measured from a point in the said center line four hundred and sixty (460) feet northwesterly from its intersection with the west line of "L" Street produced; thence northwesterly parallel with said center line fifty and three-tenths (50.3) feet; thence northeasterly at right angles to said center line sixty-five (65) feet; thence southeasterly parallel with said center line fifty and three-tenths (50.3)

feet; thence southwesterly at right angles to said center line sixty-five (65) feet to point of beginning. Said above described tract lying within Section Thirty-two (32), Township Twenty (20), North, Range Fifty (50) West of the Sixth Principal Meridian.

(c). A certain lease made by C. H. Silvernail to the Western Public Service Company, dated the 1st day of November, 1940, and covering the following described property, to-wit: Lot Twelve (12), Block Seven (7), Original Town of Bridgeport, Morrill County, Nebraska,

(d). The right of said company to use any other real estate in connection with and incident to its use of the above described real estate and property,

(e), All real, personal and mixed property of all kinds and descriptions owned by said corporation which constitutes a part of, or are appurtenant to, or are used in connection with said public utility properties in serving said City and its inhabitants and such rural lines as are a part of the unit serving said City, whether such property be located within or without or partly within and partly without the corporate limits of said City.

And excluding, and not including, the following described property,

(a). The 33,000 volt transmission line and its poles of the Western Public Service Company within and without the corporate limits of the said City.

(b). The 33,000 volt branch transmission line and its poles of the Western Public Service Company delivering power to the Lyman-Richey Sand & Gravel Corporation pit within and without the corporate limits of said City.

(c). The 2300 volt primary line and its poles running northerly from the electric light and power plant, transformers and substation located on Lot one (1), Block Five (5), Original Town of Bridgeport, Morrill County, Nebraska, to the unincorporated Village of Northport, Nebraska, within and without the corporate limits of said City.' "

The decisions and texts on the subject of eminent domain

are in accord on the proposition that property to be taken must be described with a reasonable degree of accuracy.

Dailey v. Missouri P. R. Co., 103 Neb. 219, 170 N. W. 888, is a case wherein it was declared that the petition in condemnation was insufficient because of inaccuracy of description. The reason given was the following: "A petition containing statements so inaccurate respecting dimensions would be very apt to mislead the appraisers in the assessment of damages under the statute. * * * A petition to condemn the land of another for the use of a railroad is the basis of the proceeding, and before an owner over his protest can be compelled under the sovereign power of eminent domain to part with the title to his land, it is essential to the validity of the proceedings that the petition filed with the county judge * * * accurately describe the tract sought to be condemned."

Other reported cases on the subject of accuracy in description of property to be taken by eminent domain are Blue River Power Co. v. Hronik, 112 Neb. 500, 199 N. W. 788; Omaha & R. V. R. Co. v. Rickards, 38 Neb. 847, 57 N. W. 739.

In an unreported case in the United States District Court of Nebraska, Omaha Division, No. 1317 Equity, wherein existed a situation very much like the one presented here, in a memorandum opinion, it was said: "In Nebraska, numerous authorities involving eminent domain statutes hold that the petition, under which proceedings to condemn are instituted, must accurately describe the property sought to be taken, and that such description is necessary to confer jurisdiction. This does not mean the exactness required by deeds of conveyance but substantial accuracy and a certainty by reason of which the identical property can be definitely located." It is pointed out in the opinion that the proposal was void since in the description in the proposal to the electorate a power of selection was delegated to the court of condemnation whereas that power was resident in the electorate.

The holding was followed in a later case in the United

States District Court of Nebraska, Lincoln Division, No. 561 Equity.

Of course the opinions in these cases are not binding on this court but we consider the reasoning persuasive and sound and expressive of a proper attitude to be taken toward the description of property to be taken by proceedings in eminent domain.

In Nichols on Eminent Domain, (2d ed.) Vol. 2, Par. 399, p. 1068, wherein is discussed description of land sought to be taken it is said: "The petition must contain an accurate description of the land sought to be taken, so that the extent of the claim will appear on the record. This description should be, it is sometimes said, as accurate as is required in the case of a deed of land. At any rate it must be such that a surveyor could locate the parcel described without the aid of extrinsic evidence. * * * It is no objection that the description is incomplete or unintelligible without consultation with a map or plan, if the map is referred to in the description and is filed with it, and taken together the map and the description make clear what is intended to be included in the taking. A map not referred to in the description cannot be considered, and a plan referred to in the description, but not filed * * * is unavailable."

The rule requiring accuracy in the description of property is not one of caprice or of mere technicality. It is a rule of reason and of necessity and not of expediency. As pointed out in Dailey v. Missouri P. R. Co., *supra*, inaccuracy or insufficiency of description in the petition would be apt to mislead the appraisers in the assessment of damages. There is however a more cogent and compelling reason for the rule. The petition, where petition is the basis of the proceeding, is the instrument or vehicle of conveyance of the property and rights from the condemnee to the condemnor, and of necessity such an instrument should intrinsically contain a description of the property and rights conveyed.

In cases such as the one here under consideration, it is true, no petition is required, but the proposal adopted by

the electors has the office of the petition in the ordinary condemnation proceeding. In the matter of description the rules applying to petitions should apply with equal force.

From an examination of the proposal it cannot well be said that the description meets the requirements of the rules of the decisions and the texts.

Attention is directed to the first paragraph of the proposal as hereinbefore quoted. It will be observed that the description is "all of the public utility property of the Western Public Service Company, a corporation, located and and (sic) operated partly within and partly without the City of Bridgeport, Nebraska, * * * and the entire distributing system of the Western Public Service Company supplied with electricity from such electric light and power plant, transformers and substation and which is located partly within and partly without the corporate limits of the said City, * * * ."

Attention is also directed to paragraphs (d) and (e) of the proposal.

It will be observed that the only description is by name of the claimed owner and by indefinite location of property.

It cannot be reasonably asserted that anyone except by extrinsic examination and investigation could locate the property or ascertain the quantity thereof from the description contained in these paragraphs of the proposal.

We cannot do other than to conclude, assuming that the city is empowered to condemn the properties of plaintiff under the provisions of section 19-701, R. S. 1943, and further assuming that the allegations of plaintiff's petition are true, that the city is barred from so doing under the proposal herein involved on account of inaccuracy and insufficiency of description in the proposal. For this reason the demurrers were improperly sustained:

The next contention of appellant to which we give attention is that the proposal was fatally defective in that the Western Public Service Company was named as owner whereas at the time of the election the appellant was owner of the property sought to be condemned.

It would appear in the light of the holdings of this court and in the light of our holding herein that the doctrine of "relation" is not applicable that the position is well taken.

. In Gerrard v. Omaha, N. & B. H. R. R. Co., 14 Neb. 270, 15 N. W. 231, it was said: "The R. R. Co. acquires merely the right of way possessed by the parties to the proceedings. It is therefore its duty to bring in all parties having an interest in the estate in order that the condemnation money may be properly applied."

In Nichols on Eminent Domain, (2d ed.) Vol. 2, Par. 403, p. 1074, it is said: "It is the duty of a corporation seeking to acquire land by eminent domain to ascertain the state of the title so that it may designate in its petition and make parties respondent or defendant all persons or corporations having any such interest in the property sought to be taken as will entitle them under the constitution or laws of the state to compensation for the taking."

The effect, according to Nichols, Eminent Domain, (2d ed.) Vol. 2, Par. 404, p. 1075, is that: "It is generally held that, when the condemnation of land is effected by judicial decree, failure to designate in the petition and to make a party respondent the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceedings ineffectual to transfer such interest to the condemning party, * * * ."

In case property is held in trust or title is in a minor, notice to the representative is sufficient and if ownership is unknown it is sufficient to so state in the petition. Nichols on Eminent Domain, (2d ed.) Vol. 2, Par. 403, p. 1074.

In the light of the opinion in May v. City of Kearney, *supra*, the tenor and effect of which is to say that the court of condemnation has but one function and that is to assess damages, it is imperative that the proposal shall name the persons in favor of whom an award may be assessed in order to render the condemnation valid as to them.

Having already held that the city of Bridgeport was limited in a proceeding against the appellant to the taking of the electric distribution system, it becomes necessary to say

also that the proposal goes far beyond any such limitation. For that reason, if the allegations of the petition in that respect are true, the proceedings are void, they being violative of the power granted under section 70-650, R. S. 1943, and on that ground the demurrers were improperly sustained.

What was said in our consideration of accuracy and sufficiency of description of property in a proposal under section 19-701, R. S. 1943, is equally applicable to a proposal under section 70-650, R. S. 1943, and in its disposition it must receive the same treatment.

We deem it unnecessary, in the light of the disposition of the questions already discussed, to consider the questions of estoppel, the character of the information given to the voters, or the power generally of one public agency to condemn against another.

One matter remains which seems to require some attention. It is contended that the appellant has no standing in court since it has no franchise to operate its system of utilities in the city of Bridgeport, Nebraska. This theory on its face appears unsound. No authorities are cited and we have found none the effect of which is to say that a franchise to conduct a public utility in a city or village is a condition precedent to the right to resist, on the ground of illegality, the taking of property by eminent domain.

For the reasons herein set out we conclude that the demurrers of the defendants were improperly sustained. The judgment of dismissal is reversed and the cause remanded to the district court with directions to overrule the demurrers.

REVERSED WITH DIRECTIONS.

WENKE, J., concurring.

I concur with the majority opinion for the reason, as fully set forth in the opinion, that the provisions of section 70-650, R. S. 1943, are applicable and a controlling restriction upon the power of the city of Bridgeport to take.

Therefore, the other questions decided in the majority opinion become immaterial, particularly the question of the accuracy and sufficiency of the description of the property

sought to be taken by the city, as set forth in the proposal, for it is clearly in excess of its authority to take.

If the city had the authority to take the property as set forth in the submitted proposal then it would be my opinion that the description is sufficiently accurate.