**IOWA ELECTRIC LIGHT & POWER COMPANY, a Corporation, Plaintiff,**

v.

**CITY OF LYONS, NEBRASKA, a Municipal Corporation, et al., Defendants.**

**Civ. A. No. 0137.**

United States District Court
D. Nebraska.

Sept. 30, 1958.

---

Harry R. Henatsch, of Cassem, Tierney, Adams, Kennedy & Henatsch, Omaha, Neb., for plaintiff.

John A. Young, Lyons, Neb., E. B. Perry, Arthur E. Perry, R. R. Perry and W. W. Nuernberger, Lincoln, Neb., for defendants.

ROBINSON, Chief Judge.

Whether proceedings in the condemnation of properties of the Iowa Electric Light and Power Company (which have already been initiated) are to be enjoined by this Court is the subject of the present litigation. The matter had this origin: the plaintiff, a public utility, owns a gas distribution system serving municipalities in both Iowa and Nebraska, including the City of Lyons, Nebraska. On April 3, 1956, the city held a general election at which the qualified electors voted on the question of the public acquisition of the gas distribution system, and by a majority of six ballots, 241 affirmative as opposed to 235 negative ones, the electorate signified its approval of such action. The city filed a certification of the election result with the Clerk of the Supreme Court of Nebraska, and the Supreme Court appointed three district judges to act as a Court of Condemnation to commence condemna-

tion proceedings against the plaintiff's properties in and adjoining Lyons. The plaintiff promptly instituted this suit to enjoin such activity. Its case primarily rests on two grounds, first, that the ballot was insufficient or defective insofar as it did not conform to the statutory requirements of Section 19–701, R.R.S. 1943, as amended, Cum.Supp.1957 and, secondly, that as a result of the irregularities in the ballot, the electorate was misled in failing to be informed of the intent of the city to acquire such properties, not by voluntary sale, but through the exercise of its power of eminent domain.

Shortly after it filed its suit for relief, the plaintiff made application for a preliminary injunction, which was denied by one of the judges of this Court on May 15, 1956. The condemnation proceedings were undertaken and on August 14, 1956, the Court of Condemnation made its award. The plaintiff has removed that matter from the state to the United States District Court where it is now pending (Civil Action 0288).

■ Considering the plaintiff's contentions in reverse order, we find that it completely failed to prove that the electors of the city were misled. Of the three witnesses called at time of trial, the first under cross-examination would not state whether he had actually voted; the second was not able to recall his state of mind or understanding when he did vote; and the third was found to have campaigned actively against the public acquisition and had voted on the proposition accordingly. While, therefore, the narrow margin of ballots might give rise to some speculation as to whether the electorate was in fact misled, a scrutiny of the evidence fails to produce a single instance where the plaintiff's contention is borne out. It was also developed at the trial that no effort was spared to familiarize the electorate with the essential controversy prior to the time of the election. Accompanying a reproduction of the ballot in full, notice of the election was given for three consecutive weeks in the Lyons-Mirror-Sun, the local news-

paper (Plaintiff's exhibit 4); conspicuous advertisements setting forth the "facts pertaining to the gas issue" were published in the same newspaper (Defendant's exhibit 6); and handbills of varying sizes were distributed throughout the city (Defendant's exhibit 5 and Plaintiff's exhibits 2 and 3). Such widespread, informal publicity (to mention simply the items brought formally to the Court's attention) could scarcely leave the electorate ignorant of the intentions of the city, much less the disposition of the gas company, upon the matter except by its own choice. The conclusion is inescapable that the electorate was neither misled by the ballot nor kept uninformed as to basic issues when it voted at this election.

The remaining contention is that the ballot is nevertheless defective, for it did not conform to the statutory requirements set out in Section 19–701, R.R.S. 1943, as amended, Cum.Supp.1957. Quoted in its relevant parts, this section reads: "Whenever the qualified electors of any * * * city of the second class * * * shall vote at any general or special election to acquire and appropriate, by the exercise of the power of eminent domain, any * * * gas plant or gas system, including a natural or bottled gas plant, gas distribution system, or gas pipe lines, * * * located or operating within or partly within and partly without such city * * * together with real and personal property needed or useful in connection therewith, * * * then any such city * * * shall possess and have the power and authority, by an exercise of the power of eminent domain to appropriate and acquire for the public use of any such city * * * any such works, plant, * * * pipe lines, or system * * * ". The section continues with two provisos which, except for some interesting phraseology later referred to, contain nothing pertinent to the issue here.

The ballot submitted to the electorate at the general election simply said: "Shall the City of Lyons acquire under the provisions of Chapter 19, Article 7,

Reissue Revised Statutes of Nebraska, 1943, as amended, the complete gas system owned by the Iowa Electric Light and Power Company and now serving the City of Lyons and certain lots and parcels of land immediately adjoining the City, which properties include and are more particularly described as follows * * * " (and the ballot continues with a detailed description, in two columns, of the property to be taken). At the foot of the ballot in large type were two boxes for voting purposes, one identified as "For Purchase of Gas System" and the other, "Against Purchase of Gas System". We take it that the plaintiff's principal objections to the ballot in the form in which it was submitted and its reasons why the ballot is considered fatally defective are that Section 19–701 requires the proposition voted upon to be couched in the precise words of the statute and that the section grants no power by its terms for the city to make a purchase of the gas system.

■ This much is clear: Section 19–701 specifies by what singular means a city shall possess the authority to acquire, by the exercise of the power of eminent domain, a gas system for the public use of the city, namely, only when the qualified electors at any general or special election consent by their ballots to acquire such a system in that manner. But a careful reading of the statute leads us to conclude that there is no provision setting forth in what form the ballot shall be drafted and declaring that the performance of the details is essential to the validity of the election. Specifically, we can find no mandatory provision regarding how the proposition submitted must be phrased. Absent any such requirement, the ballot will have substantially complied with the statute when the proposition submitted, however it is phrased, has not by its terms misled the electorate "and thus prevented an intelligent expression of its preference" (to borrow an apt phrase from a note in 70 Harvard Law Review 1077, 1079). Our conclusion that the statute lacks any mandatory requirement regarding phraseology appears to be supported by an expression in the first proviso of Section 19–701, that the city "shall have the power to submit such question or proposition, in the usual manner, to the qualified electors". The choice of the phrase "in the usual manner" indicates, if anything at all, that the proposition as phrased must not offend our general notions of a fair election.

■ We believe that statutory compliance has been shown in this case. The ballot used the expression "acquire under the provisions of Chapter 19, Article 7, Reissue Revised Statutes of Nebraska, 1943, as amended". The word "acquire" is perfectly proper and is not a misstatement or misrepresentation as the plaintiff would argue. As a practical matter, the controversy boils down to a determination of whether the empression "acquire under the provisions of Chapter 19, Article 7, Reissue Revised Statutes of Nebraska, 1943, as amended" is any less susceptible of understanding by the qualified electorate than the expression "acquire by the exercise of the power of eminent domain", as used in the statute. Perhaps the answer is partially affected by the degree of confidence one has in our system of public education. No doubt the latter has the advantage of immediate recognition, but at any rate we are satisfied that the expression chosen and employed is nonetheless specific and does not by its terms mislead the electorate, for the statutory reference relates only to the use of the power of eminent domain in the condemnation of properties of public utilities, and was widely publicized and generally familiar to the electorate as a result of the pre-election campaigns.

■ And what is more to the point, whether the city, once granted the authority to exercise the power of eminent domain, will ultimately elect to exercise it does not make the proposition indefinite and cause it to fall within the proscription of Drummond v. City of Columbus, 136 Neb. 87, 285 N.W. 109, rehearing denied, 136 Neb. 99, 286 N.W. 779. The ballot in our case did sufficiently

state, as we have said, the question voted upon, thereby fairly affording the electorate the right to determine whether the properties shall or shall not be acquired. By the affirmative result, the city possessed and had the power and authority but was not necessarily required to exercise it. While the selection of the method of acquiring the gas system was thereupon left to the city, this is considered an administrative decision only which does not detract from the proper character of the question. We agree with the plaintiff that the Drummond case applies, but differ as to its teaching. And any confusion which the original ruling may have created was certainly eliminated by the Supreme Court's memorandum denying a rehearing. See also, Inslee v. City of Bridgeport, 153 Neb. 559, 567, 45 N.W.2d 590, 595. Nor does our case come within the purview of Consumers Public Power District v. Eldred, 146 Neb. 926, 22 N.W.2d 188, counsel for the plaintiff having acknowledged in its trial brief that the properties involved were described with accuracy. Dicta in the Eldred case is however relied upon by the plaintiff to support its criticism of the words "For Purchase of Gas System" and "Against Purchase of Gas System" found at the bottom of the ballot involved here. We agree that the choice of the word "purchase" is not perfect, but it hardly justified, in the context in which it is found, the criticism that the elector could not therefore "except by extrinsic examination and investigation" ascertain from the information given what was the proposition submitted. We furthermore feel that undue emphasis was placed on the seemingly irreconcilable nature of the two words "purchase" and "acquire". Deliberately avoiding any prolonged discussion of whether "purchase" includes acquisition by means of exercising a power of eminent domain (with frank admission that to us the discussion seemed slightly abstruse), we are satisfied that the ballot contained a fair and reasonable statement of the question and that the elector was not prevented from intelligently expressing his preference by reason of this identification next to the place where he was to place his mark. And, we must remember, no evidence was produced to demonstrate that any elector had been so misled to his prejudice.

While it may already have been indicated by this discussion, we are persuaded that the plaintiff is not guilty of laches and estopped from raising its objections to the ballot either by reason of employing its terms in a pre-election campaign or by waiting for the results of the election before it moved into court to protect its interests. A suit for injunction is a proper action in which to present the question of an unlawful or improper exercise of the power of eminent domain. It is available to the party whose property is sought to be taken. And, of course, the need for such relief would not arise until the election had first given the city power to exercise the right of eminent domain. Heppe v. State, 162 Neb. 403, 406, 76 N.W.2d 255, 258.

From our examination of the evidence and view of the law, neither of the contentions upon which this suit was founded is meritorious. There was substantial, if not complete, compliance with the statutory provision regarding condemnation of public utilities and there was no evidence that the electors were in any respect misled. In this persuasion, we must deny the plaintiff's prayer for an injunction with costs taxed to the plaintiff. This memorandum will serve, unless counsel otherwise request, as the findings of fact and conclusions of law. Counsel for the defendants should prepare and submit a suitable order within 20 days.