289 F.2d 217
 CENTRAL ELECTRIC & GAS COMPANY, a corporation, Appellant,
v.
CITY OF STROMSBURG, NEBRASKA, a municipal corporation, and the Court of Condemnation composed of Edmund Nuss, John M. Dierks, and Dayton R. Mounts, Appellees.
 No. 16585.
 United States Court of Appeals Eighth Circuit.
 April 7, 1961.
 
 Warren K. Dalton, Lincoln, Neb., for appellant. Lloyd J. Marti and Marti, O'Gara, Dalton & Sheldon, Lincoln, Neb., on brief, for appellant.
 Thomas M. Davies, Lincoln, Neb., for appellees. Richard H. Williams, of Davies & Williams, Lincoln, Neb., and J. T. Stanton, Stromsburg, Neb., on brief, for appellees.
 Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 This is an appeal by the Central Electric & Gas Company from a judgment dismissing its complaint in an action to enjoin the City of Stromsburg and other defendants from taking further proceedings for the condemnation of the plaintiff's gas distribution system, which serves that City. The condemnation proceedings were instituted by the City on March 13, 1956, when the City Council adopted an ordinance providing for the submission to the electors of the City, at a general municipal election to be held on April 3, 1956, of the question whether or not the plaintiff's local gas distribution system should be acquired by the City through the exercise of the power of eminent domain. The ordinance became effective pursuant to Sec. 17-613, R.R.S. Neb.1943, on March 22, 1956. The ordinance provided that a notice of election be published not less than ten nor more than twenty days before the election at which the question of acquisition was to be voted on. Notice of the election was published in a Stromsburg newspaper on March 15 and March 22, 1956.
 
 
 2
 At the election a majority of the electors voted in favor of acquiring the gas distribution system. The results of the election were certified to the Supreme Court of Nebraska, which appointed a Court of Condemnation to appraise plaintiff's property. That court met on May 26, 1956, and fixed the time for the parties to plead in the proceeding for the appraisal of the plaintiff's distribution system.
 
 
 3
 The instant action was commenced on July 16, 1956, jurisdiction being based on diversity of citizenship and amount in controversy. The plaintiff challenged the legality of the City's condemnation proceedings under Nebraska law. It contended in the District Court, and contends here, that
 
 
 4
 "The notice given to the electors of [the] City, of the submission of the question of acquisition of Central's distribution system by condemnation, at the general election above referred to, was insufficient under the law of the State of Nebraska.";
 
 
 5
 and that
 
 
 6
 "The description of plaintiff's property to be condemned, contained in the question presented to the electors on the ballot at such election, was insufficient under the law of the State of Nebraska."
 
 
 7
 Judge Delehant, who presided at the trial of this case, wrote an opinion[1] in which every issue raised was carefully and painstakingly stated, explored and answered. He pointed out that primarily involved was Section 19-701, R.S.Neb. 1943, 1959 Cumulative Supplement, which specifies the procedure whereby a municipality of Nebraska may acquire a gas distribution system such as that in suit. The statute provides for the submission of the question of acquisition at an election and that "the duly constituted authorities of any such city * * * shall have the power to submit such question or proposition, in the usual manner, to the qualified electors of any such city * * * at any general city * * * election * * *." (Italics supplied.) The trial court, in ruling that the notice of the election as given was adequate, made the following statement:
 
 
 8
 "And, first, the court encounters the question of the manner and duration of the giving of notice of the election. Admittedly, section 19-701, supra, [R.S.Neb.1943, 1959 Cum.Supp.] defines neither the medium nor the duration of notice. In the single matter of the medium of notice, certainly nothing could be, or is, insisted upon more austere than the publication of notice of the election in a legal newspaper, published and of general circulation in the City of Stromsburg. That was admittedly done in respect of the election in controversy. But the question of the duration of the publication of such notice remains. The cited statute does not declare how many times or for what period such notice shall be published. Plaintiff argues that a notice of such an election ought to be published (presumably in each issue of the newspaper) for four weeks or for thirty days. And its reasoning proceeds somewhat in this fashion. It first recognizes that section 19-701, supra, defines no period at all for notice. Then, resorting to section 19-704, [R.S.Neb.1943, Reissue of 1954] quoted above, it observes that provision is made in that section that, in the event of a favorable vote upon condemnation within the thought of section 19-701, and in circumstances defined in section 19-704 `the city * * * authorities, without vote of the people, shall have the power, if necessary, to issue and sell bonds of the city * * * to provide funds to make' tender of the amount fixed by the Court of Condemnation as the value of the condemned property, in order to accomplish a taking notwithstanding a pending appeal on the question of value. Similarly, it refers to section 19-705, [R.S.Neb. 1943, Reissue of 1954] quoted above, whereunder, upon final judgment on the issue of value of the condemned property, `the duly constituted authorities of any such city * * * shall have power and it shall be their duty to issue and sell bonds of any such city * * * to pay the amount of such value and judgment without vote of the people.' It, then, contends that, from the foregoing provisions dealing with the issuance of bonds, it follows that the election of April 3, 1956 must be regarded as having ultimately been an election upon the question of the issuance of municipal bonds for the payment of the eventual purchase price for the plant. And, citing many sections of the statutes of Nebraska, it reminds the court that several of them require notice for thirty days, several others for four weeks, still others for three weeks, and some either for twenty days or for two weeks, preliminary to an election upon the issuance of bonds of municipalities, or other governmental subdivisions. And it appears finally to contend that the interval of notice more commonly prescribed for the publication of notice of elections on bond issues is four weeks, and that this court ought, on that account, to hold that notice of the election in suit should have been published for four weeks. The argument reflects favorably upon the ingenuity and industry of counsel who tender it. But it fails in the test of persuasiveness. If the legislature of the state had intended or desired to define a particular period within which notice of the election must have been published, or the number of such publications, it could have done so either by direct prescription of a period, or of the number of publications, or by reference to and incorporation of a specific statute already existing in which such a prescription was contained. It elected to do neither. And the court has no commission to impose such a requirement beyond its right to insist upon notice in such manner and for such duration as to satisfy the requirements of a fair election."
 
 
 9
 We must decline to substitute our judgment for that of Judge Delehant with respect to the doubtful question whether the law of his state requires more notice of the election than was given. We have frequently said and consistently ruled that, with respect to such a question of local law, we accept the considered views of a trial judge as to what the Supreme Court of his state would probably rule upon the question, and do not attempt to outpredict, outforecast or outguess him in that regard. See and compare Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697; Citizens Ins. Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R.2d 1376; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733. Unquestionably, the conclusion reached by Judge Delehant in regard to the sufficiency, under Nebraska law, of the giving of notice of the election was, at least, a permissible conclusion.
 
 
 10
 The question of the alleged insufficiency of the description in the notice of election and in the ballot submitted to the voters, of the property to be condemned was explained and convincingly answered by the trial judge as follows:
 
 
 11
 "But the plaintiff does challenge the adequacy and accuracy of the description of the property itself whose taking is proposed. And plaintiff seems principally to insist that there is fatal uncertainty and inaccuracy of description in the circumstance that in the ballot by which the electors voted, the question put was upon the acquisition and appropriation of `the gas system of Central Electric & Gas Company located within the City of Stromsburg, Nebraska' (emphasis added), when actually some of that system, including especially the Town Border Station with its pressure regulating and odorizing equipment was and is located outside the official limits of the city.
 
 
 12
 "Now, in Section 1 of Ordinance 164, that most recently quoted description of the gas system appears. But it is followed by two specifying and amplifying features. In the first such feature, the above quoted generality of description is followed by this language:
 
 
 13
 "`including the gas distribution system and gas pipelines, and consisting of pressure regulating stations * * * and all parts, tangible and intangible, of the gas system, used and useful in the distribution and sale of natural gas and the rendering of gas service within the City of Stromsburg, Nebraska.'
 
 
 14
 Secondly, the language thus quoted is itself followed immediately by what is characterized as a description `in greater detail,' within which are included the following items:
 
 
 15
 "`I. The Gas Pressure Regulating Station and its contents, located approximately 330 feet north of the north line of Tenth Street and 180 feet east of the east line of Main Street, adjacent to the city of Stromsburg, Nebraska, and situated on real estate owned by the Northern Natural Gas Company.
 
 
 16
 "`II. Low pressure gas mains extending from the Gas Regulating Station, of sizes and located in streets and alleys of Stromsburg, Nebraska, as follows:
 
 
 17
 "`[1.] 4" beginning at the Town Border Station, west to Main Street.' This is followed by a long description of some sixty-six further segments of those mains. Again, in paragraph VI of the particularization of the property to be taken is this language: "`All gas mains, meters, services, service pressure regulators, valves, cocks, drips, and appliances, customer service branches, and other parts and apparatus of the gas system, all contracts for the purchase and sale of gas, and all rights of way and easements, used and useful in distributing and selling natural gas and rendering gas service to the City of Stromsburg, Nebraska.' (Emphasis added.)
 
 
 18
 Section 2 of Ordinance 164 prescribes the form of ballot to be employed at the election. That is the form which was actually employed. Supra. And it will be recalled that it made express reference to the fact that the property to be taken included `the gas distribution system and gas pipelines, and consisting of pressure regulating stations,' etc. (Emphasis added.) Moreover, the notice of election published on March 22, 1956, contained a verbatim copy of that ballot with the language therein last quoted. Thus, in the ordinance, in the notice of election, and in the ballot itself, each elector of the city was informed of the intention of the city, if the proposal should prevail, to take by right of eminent domain, the Town Border Station, including the pressure regulating equipment, along with all other elements of the gas system in its entirety. In point of fact, that equipment also included the odorizing equipment.
 
 
 19
 "The validity of notice in this context is to be determined by the answer to the question whether the description in its entirety is adequate to inform the voters what property the city proposed to take. If that question be answered affirmatively, the notice is valid, so far as that point is concerned. And the court is firmly persuaded that an affirmative answer is imperative. Every step in the proceedings leading to the election, including even the naturally brief ballot itself, avowed the intention generally to take the entire gas system of plaintiff, but also specifically to take the pressure regulating equipment and facility, which means the Town Border Station. The ballot, the election notice, Ordinance 164, all disclosed that purpose. There was no concealment, evasion or ambiguity about it. Nor, in the court's opinion, is that conclusion obviated, or even impaired, by the presence in those several instruments of the phrase, `located within the city of Stromsburg, Nebraska.' Realistically understood by the voters and inhabitants of Stromsburg, the plaintiff's entire plant was located within the city of Stromsburg. And that is not less true though one or more of its elements — even, the Town Border Station, an important element — be physically placed just outside the technical boundaries of the city. Lawyers and conveyancers are sometimes concerned about, and aware of, a municipality's exact boundaries. The ordinary citizen is rarely, if at all, thus concerned or aware. He thinks of his city in broader, more general terms. And to him the entire gas system was `within the city of Stromsburg, Nebraska.'
 
 
 20
 "The court considers, therefore, that the notice of election was not invalid for misdescription of the property which it was proposed to acquire. It is also concluded that the election was validly called, conducted and held. Consequently, the plaintiff's demand must be rejected in its entirety."
 
 
 21
 No Nebraska case has been called to our attention which indicates to our minds that Judge Delehant has, in any respect, either misconceived or misapplied the applicable law of Nebraska in reaching his decision.
 
 
 22
 The judgment appealed from is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Filed July 21, 1960, 192 F.Supp. 280